UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTERPOOL, INC. D/B/A TRAC INTERMODAL | CIVIL ACTION NO. 16-2490 (MLC)(LHG) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |  |
| FOUR HORSEMEN, INC., et al., |  |
| Defendants. |  |

**COOPER, District Judge**

Plaintiff Interpool, Inc. d/b/a Trac Intermodal ("Plaintiff") initiated this action against Ayeah A. Ayesh; Four Horsemen, Inc.; and A&A Exp, Inc. (collectively, "Defendants"), alleging that the Defendants breached a maritime contract with Plaintiff by utilizing Plaintiff's chassis[1] to move maritime cargo without compensating Plaintiff. (See dkt. 1.)[2] Defendants failed to timely respond, and Plaintiff moved for entry of default and entry of judgment by default. (See dkt. 20, dkt. 27, dkt. 28.) Before resolving Plaintiff's motion for entry of judgment by default, the Court, exercising its obligation to satisfy itself that it has subject matter jurisdiction over this action, ordered Plaintiff to show cause why the action should not be dismissed for lack of subject matter

---

[1] A chassis is a rubber-tired trailer under-frame on which a container is mounted for street or highway transport.

[2] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

jurisdiction. (See dkt. 29.) The Court also invited Plaintiff to assert an alternative basis for jurisdiction to prevent the action from being dismissed if the Court were to find admiralty jurisdiction lacking. Plaintiff responded, arguing that this Court has both admiralty jurisdiction and diversity jurisdiction. (See dkt. 30.) For the reasons discussed below, the Court is unpersuaded by Plaintiff's arguments that it has admiralty jurisdiction. The Court will therefore grant its order to show cause, concluding that the Court does not have admiralty jurisdiction. As a result, the Court must also vacate the writs of maritime garnishment previously issued in favor of Plaintiff under Supplemental Rule B of the Federal Rules of Civil Procedure. Because Plaintiff has alleged an alternative basis for jurisdiction, the Court will not dismiss the case at this juncture, but will issue another order to show cause in light of the Plaintiff's failure to allege personal jurisdiction.

## BACKGROUND

The following facts are taken from the complaint, the materials submitted in support of the default judgment motion, and Plaintiff's response to the Court's order to show cause. Plaintiff is a Delaware corporation in the business of leasing marine equipment, namely chassis, for the movement of cargo. (See dkt. 1 at 2, dkt. 30-2.) The Defendants took Plaintiff's chassis from chassis pools[3] in certain marine ports "for delivery of marine cargo to consignees, to and from ports of the United States, including,

---

[3] A chassis pool is an assigned group of chassis used to satisfy the transportation requirements of a customer.

*inter alia*, the Port of Chicago," and have refused to compensate the Plaintiff. (Dkt. 1 at 2.) Plaintiff's Manager of Credit, Claims and Litigation, Karen Wolcott, specified that

> Defendants used [Plaintiff's] marine equipment to transport ocean containers between various ports. The ocean containers transported by Defendants were carried pursuant to bills of lading, which provided for the landing of the ocean import cargo and continuous on-carriage by train to the railhead, and then on [Plaintiff's] chassis [ ] to the ultimate consignee.

(Dkt. 30-1 at 2, ("Wolcott Declaration".))

Based on the information supplied to the Court by the Plaintiff, it is this Court's understanding that the Defendants took Plaintiff's chassis so that the Defendants could transport ocean import cargo pursuant to the final land portion (i.e., from railhead to consignee) of a "through" (i.e., end-to-end transportation) bill of lading. The question before the Court is thus whether a contract to lease chassis to a carrier so that the carrier may transport cargo from a railhead to a consignee pursuant to a "through" bill of lading provides this court with admiralty jurisdiction.

## DISCUSSION

### I.   Admiralty Jurisdiction

This Court has an obligation to satisfy itself that it has subject matter jurisdiction over a case and may address the issue *sua sponte*, if need be. See Fed. R. Civ. P. 12(h)(3); Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76 (3d Cir. 2003). The burden of proving subject matter jurisdiction is on the plaintiff. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). Federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Thus, if the

contract between the parties is a maritime contract, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

The Supreme Court has recognized that "[t]he boundaries of admiralty jurisdiction over contracts . . . have always been difficult to draw." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23 (2004). In Kirby, a cargo owner entered into two bills of lading with a freight forwarding company to arrange for the transportation of goods from Australia to Alabama. Id. at 18. The journey included a sea component (from Australia to Savannah, Georgia) and a land component (from Savannah, Georgia to Huntsville, Alabama). Id. at 19-20. During the land portion of the journey, a train carrying the cargo derailed. Id. at 21. The cargo was destroyed, and litigation commenced. Id. The Court initially had to decide whether the bills of lading were maritime contracts (even though they included land portions) because, if they were, federal law would apply to the underlying claims. Id. at 22-23. Looking to the "nature and character of the contract," the Court held that the bills of lading were maritime contracts "because their primary objective [wa]s to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States." Id. at 24.

The rationale of Kirby was that maritime law must accept the modern realities of maritime transportation:

> Maritime commerce has evolved along with the nature of transportation and is often inseparable from some land-based obligations. The international transportation industry clearly has moved into a new era--the age of multimodalism, door-to-door transport based on efficient use of all available modes of transportation by air, water, and land. The cause is technological change: Because goods can now be packaged in

> standardized containers, cargo can move easily from one mode of transport to another.
>
> Contracts reflect the new technology, hence the popularity of "through" bills of lading in which cargo owners can contract for transportation across and to inland destinations in a single transaction. . . . The popularity of that efficient choice, to assimilate land legs into international ocean bills of lading, should not render bills for ocean carriage nonmaritime contracts.

Id. at 25-26 (internal citations and quotations omitted).

The Supreme Court criticized the "spatial approach" employed by some federal courts when deciding whether transportation contracts for international shipping are maritime in nature. See id. at 26. The Supreme Court explained that the proper analysis was a conceptual approach:

> Conceptually, so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce--and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage. Geography, then, is useful in a conceptual inquiry only in a limited sense: If a bill's *sea* components are insubstantial, then the bill is not a maritime contract.

Id. at 27. The Court instructed that "to ascertain whether a contract is a maritime one . . . [t]he answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Id. at 23-24 (internal quotation marks, alterations, and ellipses omitted).

The contract at issue in this case is not a bill of lading that includes both land and sea components. Rather, it is a contract to use chassis for the movement of cargo that takes place exclusively on land (i.e., from railhead to consignee). Its primary objective is

to provide equipment so that a carrier can accomplish land based transportation.  The fact that the Defendants were transporting international cargo pursuant to a "through" bill of lading does not change the nature and character of the separate and distinct contract they had with Plaintiff.

The facts of this case are strikingly similar to the facts in Mediterranean Shipping Co. (USA) v. Rose, No. 08-4304, 2008 WL 4694758 (S.D.N.Y. Oct. 3, 2008).  In Rose, "[t]he defendants entered into an agreement which allowed them to use [plaintiff's] containers in order to transport goods over land." Id. at *1.  The defendants "used the containers in order to perform the land leg of intermodal shipments of goods, pursuant to contracts that [plaintiff] had with various shippers." Id. at *1-2.  The defendants failed to return the containers, breaching their contract with plaintiff. Id. at *2.  The plaintiff filed suit, invoking admiralty jurisdiction. Id. at *3.  The defendants defaulted, and the court *sua sponte* raised the question of whether it had subject matter jurisdiction over the action.  The court ultimately determined that the agreement between plaintiff and defendants was "essentially a leasing arrangement allowing defendants to lease [plaintiff's] transportation equipment, including containers, in order to carry out land-based deliveries pursuant to other contracts for the carriage of goods." Id. at *11.  The court held that it did not have admiralty jurisdiction over the dispute, "[b]ecause the primary objective of this contract is leasing equipment for land transport, and not maritime commerce." Id.  The Rose case clearly supports the result here.

The cases cited by Plaintiff do not require a different result.  First, Plaintiff cites Foulk v. Donjon Marine Co., 144 F.3d 252 (3d Cir. 1998) and argues that it has met all of

the pleadings requirements under the Federal Rules to invoke admiralty jurisdiction because it "clearly included a jurisdictional statement that this claim is brought in admiralty." (See dkt. 30 at 2-3.) The issue in Foulk was "how specific a party must be in identifying an admiralty claim in a complaint when the party is pleading alternative theories of subject matter jurisdiction." Foulk, 144 F.3d at 256. The defendants in Foulk asserted that a plaintiff must specifically cite to rule 9(h) to invoke the admiralty jurisdiction of the Court. Id. The Third Circuit disagreed and concluded that such a literal citation was not required. See id. This case is clearly inapplicable. The question here is not whether Plaintiff has properly elected to proceed under admiralty jurisdiction. Rather, it is whether Plaintiff has provided facts sufficient to support its applicability.

Plaintiff also cites Unitas Fin. Ltd. v. Di Gregorio Navegacao Ltda., No. 99-10262, 2000 WL 35795068 (11th Cir. Apr. 10, 2000) and Itel Containers International Corp. v. Atlanttrafik Express Service, Ltd., 668 F. Supp. 225 (S.D.N.Y. 1987) for the proposition that chassis are maritime property. These cases are also inapplicable and do not require a different result.

In Unitas, the Eleventh Circuit determined that the district court erred in holding that shipping containers and chassis were not maritime property and therefore could not be subject to Supplemental Admiralty Rule D Warrants of Arrest in Rem. See Unitas, 2000 WL 35795068, at *2. The Eleventh Circuit explained, citing the contract between the parties, that "the parties intended the shipping containers and chassis to be maritime property." Id. The Court further explained that Supplemental Admiralty Rule D allowed for the warrant of arrest of "other property," such as containers and chassis. Id.

Supplemental Admiralty Rule D is not at issue in this case.  Further, this Court does not read <u>Unitas</u> as holding that chassis are always maritime property.  That court relied specifically on the contract at issue between those parties in making its determination.

In <u>Itel Containers</u>, the court was concerned with a claim brought pursuant to the Federal Maritime Lien Act, 46 U.S.C. § 31342.  Under the Lien Act, "a person providing necessaries to a vessel on the order of the owner or person authorized by the owner- (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel." 46 U.S.C. § 31342.  The court was asked to determine "[w]hether maritime liens may be asserted for charges owning on chassis and containers for periods they were not used on board ship. . . ."  <u>Intel Containers</u>, 668 F. Supp. at 227.  The court held that they could be, explaining that "[c]ontainers and chassis . . . are necessary to the operation of a modern container ship not only when they are on board ship but also when they are being used to transport or store freight around the port area, or to load it on board." <u>Id.</u> at 229.  In making its ruling, the court noted that "a maritime lien would be inappropriate for container or chassis charges for periods when the equipment was used for a wholly non-maritime purpose, for example in train or air transport." <u>Id.</u>  Here, Plaintiff does not assert it has a lien on a vessel.  It also does not state that its chassis were used solely "to transport or store freight around the port area, or to load it on board [a ship]." <u>Id.</u>  The Court does not find this case applicable.

Based on the Plaintiff's pleadings and submissions to this Court, the Court finds that the equipment at issue here was used exclusively for land transportation.  The fact

that the containers placed on the chassis by defendant were shipped overseas pursuant to a bill of lading calling for both land and sea transportation components does not alter the primary objective of the contract between Plaintiff and Defendants, which is for the use of chassis for land transportation.  The contract between the parties is not a maritime contract and therefore, the Court does not have admiralty jurisdiction over this matter.

## II.     Rule B Maritime Attachment

Rule B maritime attachment and garnishment is a remedy available only under a court's admiralty jurisdiction.  See Fed. R. Civ. P. 9(h) (Supplemental Rules for Admiralty or Maritime Claims are limited to claims for relief "within the admiralty or maritime jurisdiction"); Fed. R. Civ. P., Supp. R. A(1)(A) ("These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) . . . .")  "A party may only seek Rule B attachment if the underlying claim satisfies admiralty jurisdiction under 28 U.S.C. § 1333."  ProShipLine Inc. v. Aspen Infrastructures, Ltd., 594 F.3d 681, 687 (9th Cir. 2010); see also Alphamate Commodity GMBH v. CHS Europe SA, 627 F.3d 183, 186 (5th Cir. 2010) ("If the underlying dispute or claim does not fall within admiralty jurisdiction, the court lacks the authority to issue a Rule B attachment."); Maritima Pertoleo e Engenharia Ltda v. Ocean Rig IA, 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999) ("The absence of maritime jurisdiction would prove fatal to plaintiff's attachment.").  Because the contract underlying Plaintiff's breach of contract claim is not a maritime contract, there is no jurisdictional basis for the Court's May 17, 2016 Orders, granting Plaintiff's Motion for Writ of Garnishment (dkt. 9) and Plaintiff's Motion for Appointment of Thomas M. Grasso to Serve Process of Maritime Attachment

& Garnishment (dkt. 10).  See Aston Agro-Industrial AG v. Star Grain, Ltd. No. 06-2805, 2006 WL 3755156, at *2 (S.D.N.Y. Dec. 20, 2006) ("Absent the requisite admiralty or maritime jurisdiction, a Rule B maritime attachment is void.").  Thus, the Court must vacate those orders and the writs issued from them.

### III.  Diversity Jurisdiction

In response to this Court's order to show cause, Plaintiff argues that this Court alternatively has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Based on the submissions of Plaintiff, the Court is satisfied that it has subject matter jurisdiction by virtue of diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and there is an amount in controversy exceeding $75,000.  However, the complaint and additional submissions of the Plaintiff fail to include any allegations relating to the defendants' contacts or activities with relation to the forum state, New Jersey.  Because Plaintiff's complaint does not establish a *prima facie* case of personal jurisdiction, the Court will issue a second Order to Show Cause why the Court should not deny Plaintiff's motion for entry of judgment by default (dkt. 25; dkt. 26) for lack of personal jurisdiction and dismiss this action.

## CONCLUSION

For the reasons stated above, the Court concludes that it does not have admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333 and will grant the Order to Show Cause.  Because the Court lacks admiralty jurisdiction, the Rule B maritime attachment and garnishments ordered by this Court are void.  The Court will vacate those orders and the writs issued therefrom.  The Court also concludes that it has subject matter jurisdiction pursuant to 28 U.S.C. 1332; however, the Court questions whether it has personal jurisdiction over the Defendants.  As a result, the Court will issue an order to show cause as to why Plaintiff's motion for entry of judgment by default (dkt. 25; dkt. 26) should not be denied for lack of personal jurisdiction, and this action should not be dismissed.

     s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** February 8, 2017